[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 31, 2008
THOMAS K. KAHN
CLERK

No. 07-14272
Non-Argument Calendar

_____

Agency No. A97-959-189

JIAN CHUAN XIE,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(March 31, 2008)**

Before CARNES, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Jian Chuan Xie ("Xie") petitions for review of the Board of Immigration Appeals' ("BIA's") order affirming the Immigration Judge's ("IJ's") denial of his application for asylum and withholding of removal. After review, we deny the petition.

## I. BACKGROUND

### A.    Asylum Application

On November 9, 2004, Xie, a native and citizen of China, arrived in the United States without an entry document or a passport. Xie later claimed he had boarded with a fake Japanese passport but had torn it up in flight. Upon his arrival, an immigration officer interviewed Xie, who requested political asylum. Xie stated that he feared a prison sentence if returned to China because he had objected to the government's attempt to take his family's land. Xie left China two months earlier with the help of a "snakehead." However, Xie refused to answer a number of questions, including his address, his father's name and where his parents were born.

On November 16, 2004, the Immigration and Naturalization Service served Xie with a Notice to Appear ("NTA"), charging him with removability under Immigration and Nationality Act ("INA") § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I), as an immigrant without valid travel documents. Xie admitted the NTA's allegations and conceded removability.

2

On July 5, 2005, Xie filed an application for asylum, withholding of removal and relief under the United Nations Convention Against Torture ("CAT"). Xie's application stated that he left China in September 2004 and would be imprisoned and mistreated if returned to China.

In support of his application, Xie attached his citizen identification card, his family's household register, his "notarial" birth certificate and two letters, one from Xie's father and one from a neighbor. His father, Bao Ming Xie, wrote that the government offered little compensation for the family's property, and his son protested. As a result, his son was scalded badly on his foot, and was accused of anti-government activities. Xie's father stated that the police destroyed his house when he refused to tell them his son's whereabouts. The return address on Bao Ming Xie's letter was 54 Xiean Village, Chengmen township, Foochow City, Fujian Province, China.

Fa Dong Xie, a neighbor, wrote that Xie was the most active of the "dissidents" to the government's plan to confiscate all village property to construct a factory. Xie organized a 20-person protest in the village. The protestors waved posters and shouted that the government was unfair, but the police disrupted the protest after two hours. Fa Dong Xie later heard that Xie's family home was destroyed.

3

A June 2004 State Department Profile of Chinese Asylum Claims ("2004 State Department Profile") estimated that thousands of people were detained by the government for peacefully expressing their political or social views. It also noted that documentation in China was subject to widespread fabrication, including documents verifying identity, birth and personal history. One Chinese official "with responsibilities relating to notarial offices in Fujian province," Xie's home province, stated that "no reliable documents exist to prove relationships and notaries must do field investigations to confirm information in notarial documents." In a 1999-2000 investigation, the United States Consulate General in Guangzhou found that only 17 out of 60 documents were authentic. The report noted a "burgeoning market in counterfeit identification documents."

**B.     Asylum Hearing on January 12, 2006**

At the asylum hearing on January 12, 2006, Xie testified that he had lived in China until May 2004 with his parents at 54 Xiean Village, Chengmen township, Foochow City, Fujian Province, China. According to Xie, in February 2004, the government took property from 200 families in his village to build a manufacturing plant and paid Xie's family 10,000 yuan for the property. Xie visited the local government office to request greater compensation. When the official on duty informed him that the "'[g]overnment decision is [the] government decision,'" Xie

4

hit the desk, resulting in security hitting him twice with a police stick and throwing him out.

Xie testified that on March 15, 2004, he traveled 36 hours by train to Beijing to appeal to the central government. Xie walked around Tiananmen Square, holding a piece of cloth which stated that the government was unfair and the citizens needed human rights. After thirty minutes, the police arrested him. At the detention center, the police hit Xie and asked why he was making trouble "'for the government in Beijing.'" Xie explained about the unfair compensation for his property, and the police told him that he should return home because it was a local government decision. Before releasing him, the police asked Xie to sign a statement admitting that he made trouble for the government. When Xie refused to sign the statement, the police responded by pouring boiling water onto his feet. Xie testified that he was held in Beijing for 15 days, during which time he was beaten, burned with cigarettes, and denied food.

After his release, Xie returned to his village and organized a protest. The protesters displayed banners and shouted slogans. According to Xie, the police intervened within ten minutes of the protest's start. Xie escaped to his cousin's home. When the IJ asked why Xie's neighbor Fa Dong Xie had written that the protest continued for two hours before police arrived, Xie said that Fa Dong Xie had made a mistake. According to Xie, the police issued a warrant for his arrest,

5

beat his parents and destroyed their house. Xie's parents borrowed $40,000 to pay a "snakehead" to smuggle Xie out of China.

Using a fake Japanese passport, Xie traveled from Hong Kong to France in May 2004. Xie stayed in France for several months before flying to the United States. Xie testified that his intention all along was to travel to the United States because he believed the United States would provide him with protection. He destroyed his fake passport on the US-bound plane. Xie admitted that he had not attempted to obtain a Chinese passport.

On cross-examination, Xie acknowledged that his parents and Fa Dong Xie, his neighbor and fellow protestor, continued to live in the same village. Xie explained that his father was using the same mailing address of the destroyed house even though his parents were living in a different house. When asked why his asylum application had not reported the cigarette burning and beatings in Beijing or his parents' beating, Xie said that he did not want to talk about those incidents at the time, but wanted to talk about them before the judge. The IJ noted a discrepancy in the number on Xie's father's identification card, which was attached to his letter, and the number listed for Xie's father in the household register.[1]

---

[1]The household register listed Xie's father's identification card number as 350111195509270415. Xie's father's identification card contained the number 350111550927041.

**D.    Decisions of the IJ and BIA**

The IJ denied Xie's application for asylum, withholding of removal, and CAT relief, and ordered Xie removed to China. The IJ found that Xie had not shown past persecution or a well-founded fear of future persecution.

The IJ also found that Xie's "testimony simply ha[d] not been sufficiently credible . . . to find that [Xie] met his burden of proof." The IJ noted these discrepancies in the evidence: (1) Xie was unwilling to provide basic information upon his arrival at the airport despite his claim that he sought asylum in the United States, and not other countries, because the United States respected human rights; (2) his asylum application stated that he left China in September 2004 but he testified that he left in May 2004; (3) Xie's father continued to use the address from the family home that Xie claimed was destroyed when police sought to arrest Xie; (4) although Xie claimed his parents could not survive on the 10,000 yuan offered for their land, his parents were able to pay "substantially more" money in United States dollars to have Xie smuggled into the United States; (5) Xie testified that Beijing police beat him in Tiananmen Square before taking him to the police station, but his asylum application did not mention this incident; (6) Fa Dong Xie wrote that the community-wide protest lasted for two hours, while Xie testified that it lasted for ten minutes; and (7) there was a discrepancy between Xie's father's

7

identification number on the household register and on his father's identification card.

The IJ found that due to the widespread fabrication of documents in China, as reported by the State Department, there were no documents that the court could rely upon to establish Xie's identity, further diminishing his entitlement to asylum. The IJ noted that Xie had not tendered an official document from the Chinese embassy or consulate or a passport from China and had not explained why he could not obtain one. Alternatively, the IJ concluded that Xie had failed to show a nexus between the alleged persecution or feared future persecution and a statutorily protected ground.

Xie appealed to the BIA. The BIA adopted and affirmed the IJ's decision. The BIA also noted that it was not persuaded that the IJ's credibility finding was clearly erroneous. Xie petitioned this Court for review.

## II. DISCUSSION[2]

### A. Asylum and Adverse Credibility

An asylum applicant has the burden to show, with specific and credible evidence, either past persecution or a "well-founded fear" of future persecution on account of race, religion, nationality, membership in a particular social group or

---

[2]On appeal, Xie does not challenge the denial of his claim for CAT relief. Therefore, we do not address this claim further. See Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1286 n.3 (11th Cir. 2003).

political opinion. 8 C.F.R. § 208.13(a), (b); Al Najjar v. Ashcroft, 257 F.3d 1262, 1287 (11th Cir. 2001).

In 2005, the REAL ID Act of 2005 amended 8 U.S.C. § 1158, changing the law regarding credibility determinations. See Pub. L. No. 109-13, § 101(a)(3), 119 Stat. 231, 303 (2005). The amendments to § 1158 took effect on May 11, 2005, the date of enactment, and apply to applications of asylum and withholding of removal filed after that date. See § 101(h)(2), 119 Stat. at 305. Xie's application was filed on July 5, 2005, and thus the REAL ID Act's new law regarding credibility determinations applies.

Pursuant to § 1158(b)(1)(B)(iii), as amended by the REAL ID Act, the BIA and the IJ may make an adverse credibility determination based on the "totality of the circumstances" and deny an asylum claim based on inconsistencies, inaccuracies and falsehoods contained in the evidence without regard to whether they go to the heart of the claim.[3] INA § 208(b)(1)(B)(iii); 8 U.S.C.

_____

[3]Section 1158(b)(1)(B)(iii) states in full:

Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or

§ 1158(b)(1)(B)(iii); Chen v. U.S. Att'y Gen., 463 F.3d 1228, 1231 (11th Cir. 2006).

"An IJ's denial of asylum relief . . . can be supported solely by an adverse credibility determination, especially if the alien fails to produce corroborating evidence." Id. However, the IJ must consider all the evidence submitted by the applicant, including any documentation. Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1287 (11th Cir. 2005). The IJ must make an explicit credibility finding and offer "specific, cogent reasons for the finding." Chen, 463 F.3d at 1231. If the IJ has made an explicit credibility finding, the applicant bears the burden to show that the finding is not supported by "specific, cogent reasons" or by substantial evidence. Id. When the IJ lists an applicant's inconsistencies, which are supported by the record, we "will not substitute our judgment for that of the IJ with respect to its credibility findings." D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 819 (11th Cir. 2004).

**B.    Xie's Claim**

---

any other relevant factor. There is no presumption of credibility, however, if no adverse credibility determination is explicitly made, the applicant or witness shall have a rebuttable presumption of credibility on appeal.

INA § 208(b)(1)(B)(iii); 8 U.S.C. § 1158(b)(1)(B)(iii). This "totality of the circumstances" test for credibility determinations also applies to applications for withholding of removal. INA § 241(b)(3)(C); 8 U.S.C. § 1231(b)(3)(C).

On appeal, Xie challenges the IJ's adverse credibility determination. After review, we conclude that the IJ made an explicit adverse credibility finding and provided specific, cogent reasons for finding Xie not credible that are supported by the record.[4]

Under § 1158(b)(1)(B)(iii), the IJ may rely on inconsistencies in the record that do not go to the "heart" of the applicant's claim. INA § 208(b)(1)(B)(iii); 8 U.S.C. § 1158(b)(1)(B)(iii). Further, the IJ may base a credibility determination on "the demeanor, candor, or responsiveness of the applicant . . . [and] the inherent plausibilty of the applicant's . . . account." Id. Thus, the IJ did not err in basing the credibility determination on the inconsistencies identified in its order and was not required to accept Xie's explanations for those inconsistences.[5] The record in this particular case does not compel reversal of the IJ's credibility determination.

We also cannot say that the IJ erred in finding that Xie failed to establish his identity. Xie traveled to the United States on a false Japanese passport he admitted destroying on the plane. Although Xie had lived in the United States since November 2004, he had not tried to obtain from the Chinese embassy or consulate

---

[4]Because the BIA adopted the IJ's decision, we review the orders of both the BIA and the IJ. See Al Najjar, 257 F.3d at 1284. We review an IJ's credibility determination under the substantial evidence test, and "like any fact finding, [it] may not be overturned unless the record compels it." Forgue, 401 F.3d at 1286-87 (quotation marks omitted).

[5]We do not address the IJ's alternative conclusion that Xie failed to show a nexus between the alleged persecution or fear of persecution and his political opinion.

any official document verifying his identity by the time of the hearing two years later. Instead, in support of his application, Xie submitted a Chinese identification card, a notarial birth certificate and his family's household register. However, the 2004 State Department Profile stated that these types of documents–documents to verify identities and births and to prove relationships–are commonly fabricated in China, and in particular in Xie's home province of Fujian. In light of these facts, we cannot say that the IJ erred in finding that Xie failed to produce reliable proof of his identity.

Because Xie failed to prove his asylum claim, his claim for withholding of removal also fails. See Al Najjar, 257 F.3d at 1292-93.

**PETITION DENIED.**